UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NATASHA ATHENS d/b/a Favorite Things, <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA and MEGAN SCHOLZ, <br><br> Defendants. | Civil Action No. 1:21-cv-00748-SM |

**DEFENDANTS BANK OF AMERICA, N.A. AND MEGAN SCHOLZ'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants Bank of America, N.A. ("BofA")[1] and Megan Scholz ("Scholz," and together with BofA, "Defendants"), by and through their attorneys, Primmer Piper Eggleston & Cramer PC, respectfully submit this memorandum of law in support of their motion to dismiss the September 3, 2021 Complaint (the "Complaint" or "Compl."), filed by Natasha Athens d/b/a Favorite Things ("Plaintiff"), appearing *pro se*. Plaintiff's Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) because it fails to adequately plead any cognizable claim for relief against Defendants.

**I.      INTRODUCTION**

Plaintiff contends that Defendants improperly refused to forgive a loan she obtained pursuant to the Paycheck Protection Program ("PPP" or "Program"). Compl. at 1. Although the Complaint does not clearly delineate the claims it is asserting, in an October 4, 2021 Order, the Court determined that pursuant to 28 U.S.C. § 1915(e)(2), Plaintiff's Complaint, "[c]onstrued

---

[1] Incorrectly named in Plaintiff's Complaint as "Bank of America."

1

liberally," contains state law claims for: "1) fraud;[2] 2) breach of contract; and 3) intentional infliction of emotional distress." Order, ECF No. 14, at 4.

Each of Plaintiff's claims fails as a matter of law for numerous reasons. Fundamentally, Plaintiff's central contention—that Defendants improperly denied her PPP loan forgiveness application—is baseless. Plaintiff's loan forgiveness application was denied because the documents she submitted in support of her forgiveness request—which were different documents than the ones she submitted in support of her original loan application—confirmed she did not qualify for the loan she received, and thus was not entitled to loan forgiveness pursuant to the clear and unambiguous rules promulgated by the Small Business Administration ("SBA"). These facts—which can be considered on a motion to dismiss because Plaintiff's forgiveness application is incorporated by reference into Plaintiff's Complaint—undermine Plaintiff's claims and warrant dismissal of her Complaint.

Plaintiff's Complaint suffers from several other fundamental defects as well. First, Plaintiff's fraud and breach of contract allegations effectively allege an entitlement to loan forgiveness under the PPP, but the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which established the PPP, does not create a private right of action. And even if it did, the CARES Act and its accompanying SBA regulations are clear and unequivocal that PPP loan forgiveness is not guaranteed and any funds not eligible for forgiveness must be repaid. Plaintiff's PPP loan forgiveness documentation confirms that Plaintiff was not entitled to a PPP loan and, therefore, not entitled to forgiveness of her already-disbursed PPP loan. Second, Plaintiff's claims

---

[2] As the Court notes, Plaintiff's claim is for common law civil fraud, not criminal fraud. Order, ECF No. 14, at 4. Criminal fraud does not provide a private right of action. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

are inadequately pled. Plaintiff's fraud claim fails to state a claim on which relief can be granted with the specificity required under Federal Rules of Civil Procedure 12(b)(6) and 9(b), as Plaintiff fails to identify *any* fraudulent statement Defendants allegedly made, let alone the who, what, where, and when regarding any such misrepresentation. Plaintiff's breach of contract claim fails to specify which contract—and the specific provision of the contract—Defendants allegedly breached. And Plaintiff's intentional infliction of emotional distress claim lacks any of the requisite detail necessary to satisfy the high bar of asserting such a claim.

Accordingly, the Court should dismiss Plaintiff's Complaint in its entirety.

## II.   FACTUAL BACKGROUND

### A.   PPP Background

In March 2020, governments began issuing shutdown orders to reduce the spread of the novel coronavirus, COVID-19. *See* "Business Loan Program Temporary Changes; Paycheck Protection Program," 85 Fed. Reg 20,811 (Apr. 15, 2020).[3] To assist businesses affected by these shutdown orders, among other concerns, Congress passed the CARES Act. As is relevant here, the CARES Act, passed on March 27, 2020, created the Paycheck Protection Program. *Id.* The CARES Act called for private lenders to provide funding in the form of loans to small businesses, which would be guaranteed by the SBA. *Id.*

The PPP ran from April 3 to April 15, 2020, from April 27 to August 8, 2020, and from January 11 to May 31, 2021. *See, e.g.*, "Covid-19 Relief Assistance to Small Businesses: Issues

---

[3]   *Available at* https://www.federalregister.gov/documents/2020/04/15/2020-07672/business-loan-program-temporary-changes-paycheck-protection-program. "The contents of the Federal Register shall be judicially noticed." 44 U.S.C. § 1507. A court may consider evidence appropriate for judicial notice without converting a motion to dismiss into a motion for summary judgment. *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013).

3

and Policy Options," **Congressional Research Service**, 2–5, 8, 10 (October 1, 2021).[4] PPP lending in the spring of 2020 was characterized by overwhelming demand. In the first two weeks of the Program, 4,975 lenders had processed and funded 1,661,367 loans.[5] As then-SBA Administrator Jovita Carranza observed, this equaled fourteen years' worth of SBA lending in fourteen days.[6] When the second round of PPP lending concluded on August 8, 2020, BofA had funded 343,626 loans.[7]

The core principle of the PPP was that if a small business was entitled to a PPP loan and used the loan to make payroll and other qualifying expenditures, then the loan would be forgiven, and the private lender reimbursed by the federal government rather than by the borrower; if the small business was not eligible for a PPP loan, then the small business would be required to pay back the loan to the private lender at a one-percent interest rate. "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act," 86 Fed. Reg. 3,692, 3,703–04 (Jan. 14, 2021). Over the course of the Program, the SBA implemented a

---

[4] *Available at* https://crsreports.congress.gov/product/pdf/R/R46284. Judicial notice may be taken of "reliable sources, such as the Congressional Research Service . . . reports." *Kareem v. Haspel*, 986 F.3d 859, 867 n.7 (D.C. Cir. 2021).

[5] "Paycheck Protection Program (PPP) Report," **Small Business Administration**, 2 (Apr. 16, 2020), *available at* https://home.treasury.gov/system/files/136/SBA%20PPP%20Loan%20Report%20Deck.pdf. Courts may judicially notice reports of administrative bodies. *See, e.g.*, *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of reports by federal government agencies).

[6] Jovita Carranza, "SBA: PPP processed more than 14 years worth of loans in less than 14 days," **USAToday** (Apr. 21, 2020), *available at* https://www.usatoday.com/story/opinion/todaysdebate/2020/04/20/sba-ppp-14-years-worth-loans-14-days-editorials-debates/5167961002/.

[7] "Paycheck Protection Program (PPP) Report," **Small Business Administration**, 1 (Aug. 8, 2020), *available at* https://home.treasury.gov/system/files/136/SBA-Paycheck-Protection-Program-Loan-Report-Round2.pdf.

series of rules and guidance documents governing loan eligibility.[8]  Three rules are most relevant to this case.

***First***, the Interim Final Rule ("IFR") states that borrowers must calculate their maximum PPP loan by calculating their total "[p]ayroll costs," which consists of "compensation to [United States-based] employees . . . in the form of salary, wages, commissions, or similar compensation," as well as related benefits.  85 Fed. Reg. 20,811, 20,812–13; *id.* at 20,815 ("Borrowers must submit . . . documentation as is necessary to establish eligibility").

***Second***, borrowers were required to certify, among other things, that the documentation submitted to the lender accurately reflected payroll costs, and to acknowledge that "the lender will confirm the eligible loan amount using tax documents that I have submitted."  *Id.* at 20,814–15.  Borrowers that submitted PPP applications through BofA, like Plaintiff, were required to "certify in good faith," among other things, that the "Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the [SBA]."  Declaration of George E. Driver IV ("Driver Decl.") Exhibit 1.[9]  Upon approval, borrowers then signed a PPP Promissory Note, which required the borrower to agree, among other things, that (1) "Borrower was and remains eligible to receive a loan under the rules in effect at the time Borrower submitted to Bank its [PPP] Application Form," (2) "Borrower has provided to Bank all documentation

---

[8] The first of these rules was released the evening of April 2, 2020, hours before the Program opened on April 3, 2020.  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg 23,450, 23,450 (Apr. 28, 2020).

[9] A court may consider "documents incorporated by reference in the Complaint."  *See Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (brackets omitted); Fed. R. Civ. P. 10(c).  Though Plaintiff did not attach her PPP application or PPP loan forgiveness application to her Complaint, the Complaint discusses both at length.  They are therefore documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," and therefore "may be considered in ruling on a Rule 12(b)(6) motion to dismiss."  *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

available to Borrower on a reasonable basis verifying the dollar amounts of average monthly payroll costs for the calendar year 2019," and (3) "[i]f the SBA does not confirm forgiveness of the Loan, or only partly confirms forgiveness of the Loan, . . . Borrower will be obligated to repay to the Bank the total outstanding balance remaining due under the Loan, . . . and in such case, Bank will establish the terms for repayment of the Loan Balance."  Driver Decl. Exhibit 2 at 1.

*Third*, lenders' "underwriting obligations" were "limited to": (1) confirming receipt of borrower documents; (2) confirming receipt of information that the borrower paid salaries and payroll taxes on or around February 15, 2020; (3) confirming "the dollar amount of average monthly payroll costs . . . by reviewing the payroll documentation submitted with the borrower's application"; and (4) adhering to certain anti-money laundering obligations.  85 Fed. Reg at 20,815.  Indeed, lenders were explicitly permitted to "rely on borrower documentation for loan forgiveness" and did "not need to conduct any verification if the borrower submits the documentation supporting its request for loan forgiveness and attests that it has accurately verified the payments for eligible costs."  *Id.*  In a frequently asked question, the SBA clarified that the obligation to review "the dollar amount of average monthly payroll costs . . . by reviewing the payroll documentation submitted with the borrower's application" did not "require the lender to replicate each of the borrower's calculations."  "Paycheck Protection Program Loans Frequently Asked Questions," **Small Business Administration**, 1 (June 8, 2021).[10]  Rather:

> ***Providing an accurate calculation of payroll costs is the responsibility of the borrower, and the borrower attests to the accuracy of those calculations*** on the Borrower Application Form . . . . Lenders are expected to perform a good faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning average monthly payroll cost.  For example, ***minimal review*** of calculations based on a payroll report by a recognized third-party payroll processor would be reasonable.  In addition, as the PPP Interim Final Rules

---

[10]  *Available at* https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf.  This answer was originally posted on April 3, 2020.  *Id.* at 1 n.2.

6

> indicate, ***lenders may rely on borrower representations, including with respect to amounts required to be excluded from payroll costs***.

*Id.* (emphasis added). This limited role is consistent with the CARES Act, which states that "[i]f a lender has received the documentation required from this section from an eligible recipient attesting that the eligible recipient has accurately verified the payments for payroll costs," no government action shall be taken against the lender. CARES Act, P.L. No. 11-136, § 1106(h). As the IFR observed:

> The intent of the Act is that SBA provide relief to America's small businesses expeditiously, which is expressed in the Act by giving all lenders delegated authority and streamlining the requirements of the regular 7(a) loan program . . . ***SBA will allow lenders to rely on certifications of the borrower in order to determine eligibility of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness***. Lenders must comply with the applicable lender obligations set forth in this interim final rule, but will be held harmless for borrowers' failure to comply with program criteria.

85 Fed. Reg. 20,811, 20,812 (emphasis added). *See also Savage v. United States Small Bus. Admin.*, No. 1:21-CV-0153-MSM-PAS, 2021 WL 3406387, at *1 (D.R.I. Aug. 4, 2021) ("Lenders would . . . rely on certifications of the borrower made on the PPP Application Form and be assured that the SBA would hold lenders harmless for any borrower error or misrepresentations." (quotation marks omitted)).

      **B.**     **Plaintiff's PPP Loan Application and Loan Forgiveness Application**

Plaintiff is a sole proprietor, doing business as Favorite Things. Compl. at 2. Plaintiff applied for a PPP loan in April 2020. *Id.* at 4. After declining an initial loan of $510, Plaintiff submitted screenshots that purported to be various 2019 and 2020 tax documents and requested a loan in the amount of $18,625. Compl. at 4–5. Based on Plaintiff's representations (1) that her net profits—as reflected in screenshots of her draft 2019 IRS Form 1040 Schedule C, line 31— were $2,450 for one month of operation, and (2) that she paid $15,000 in wages in the first quarter

7

of 2020—as reflected in screenshots of her 2020 IRS Form 941, Plaintiff's PPP loan was funded on May 14, 2020 in the amount of $18,625.[11] Compl. at 4–5; Driver Decl. Exhibit 3.

Several months later, Plaintiff submitted finalized 2019 and 2020 tax documentation, reflecting different numbers, in connection with her PPP Loan Forgiveness Application (SBA Form 3508S). Driver Decl. Exhibit 4. Plaintiff alleges that BofA notified her in July 2021 that her full PPP loan was eligible for forgiveness. Compl. at 9–10. Then, on August 9, 2021, Plaintiff claims that Scholz "pulled and withdrew the [PPP] application" and reduced the amount eligible for forgiveness to zero, "[u]pon closer review of the documents provided." *Id.* at 10. BofA's review was based on SBA guidance, which instructs borrowers to calculate payroll costs based in part on: (1) 2019 IRS Form 1040 Schedule C, lines 14, 19, and 31. Plaintiff's Schedule C, lines 14, 19, and 31 are all "0" or blank. Driver Decl. Exhibit 5; and (2) 2019 IRS Form 941, Taxable Medicare wages & tips, line 5c-column 1, which is also blank. Driver Decl. Exhibit 6. Plaintiff submitted no additional documentation indicating she was entitled to forgiveness.

Based on a review of Plaintiff's documents, BofA determined that Plaintiff's PPP loan was not eligible for forgiveness pursuant to the relevant SBA guidance on loan eligibility. BofA therefore had no choice under SBA regulations but to instruct Plaintiff that she was ineligible for forgiveness. *See* Compl. at 9–11. Finally, on August 23, 2021, Plaintiff alleges that Scholz again changed the forgiveness amount to $1, in order to grant Plaintiff "an automatic right to an appeal." *Id.* at 11.

---

[11] Office of Capital Access, *How To Calculate Maximum Loan Amounts – By Business Type*, Small Business Administration (Apr. 24, 2020), https://www.sba.gov/sites/default/files/2020-04/How-to-Calculate-Loan-Amounts.pdf. The SBA updated this document several times, most recently on March 12, 2021. *See* Office of Capital Access, *How to Calculate Maximum Loan Amounts for First Draw PPP Loans and What Documentation to Provide – by Business Type*, Small Business Administration (March 12, 2021), https://www.sba.gov/sites/default/files/2021-03/HowtoCalculateFirstDrawLoanAmountsFAQs-3.12.21-508.pdf.

8

### C. Plaintiff's Complaint

On September 3, 2021, Plaintiff filed a complaint in this Court. Plaintiff's claims are predicated on a belief that "as long as the [PPP] funds were used for the intended purposes, they were 100% forgiven." Compl. at 4. Based on this belief, Plaintiff alleges that she was automatically entitled to a PPP loan, that Defendants had no legitimate reason to deny forgiveness of the entire $18,625 PPP loan, and that such denial is evidence of fraud and a breach of the parties' contract. *Id.* at 9. Plaintiff alleges that she lost her business and suffered severe emotional distress because of Defendants' actions. *Id.* 1–2.

Although the Complaint does not clearly delineate the claims it is asserting, the Court, in an October 4, 2021 Order, determined that pursuant to 28 U.S.C. § 1915(e)(2), Plaintiff's Complaint, "[c]onstrued liberally," contains state law claims for: "1) fraud; 2) breach of contract; and 3) intentional infliction of emotional distress." Order, ECF No. 14, at 4.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed where it states no legal basis for relief. In deciding a motion to dismiss, this Court employs a two-pronged approach. First, the Court "screen[s] the complaint for statements that 'merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.'" *Ruivo v. Wells Fargo Bank, N.A.*, No. 11-CV-466-PB, 2012 WL 5845452, at *2 (D.N.H. Nov. 19, 2012) (quoting *Ocasio-Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir. 2011)). "[A]llegations that merely parrot the elements of the cause of action may be dismissed." *Id.*(quotation marks omitted). Second, while this Court "credit[s] as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations," they still "'must state a plausible, not a merely conceivable, case for relief.'" *Id.* (*quoting Sepúlveda-Villarini v. Dep't of Educ.*, 628 F.3d 25, 29 (1st Cir. 2010)). *Pro se* complaints, while construed liberally, still require "sufficient factual

9

matter . . . to state a claim to relief." *Bourne v. Arruda*, No. 10-CV-393-LM, 2011 WL 2357504, at *2–3 (D.N.H. June 10, 2011), *aff'd* (Oct. 1, 2013) (granting in part motion to dismiss a *pro se* complaint).

Moreover, to the extent Plaintiff brings a fraud claim against Defendants, the claim must be considered under Federal Rule of Civil Procedure 9(b) which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This heightened pleading standard, which "applies to state law fraud claims asserted in federal court," *North American Catholic Educational Programming Foundation, Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009), "means that a complaint rooted in fraud must specify the who, what, where, and when of the allegedly false or fraudulent representations," *Moore v. Mortg. Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 130 (D.N.H. 2012). *Pro se* plaintiffs must still set forth "specific facts" to sustain a fraud claim under Rule 9(b). *Moody v. PennyMac Loan Servs., LLC*, No. 16-CV-021-JL, 2018 WL 10812614, at *8 (D.N.H. Mar. 27, 2018).

## IV.     ARGUMENT

Plaintiff's Complaint should be dismissed for failure to state a claim for two primary reasons.  First, Plaintiff's breach of contract and fraud claims are, at their core, merely disguised claims to enforce a purported automatic right to forgiveness under the CARES Act for *any* approved PPP loan provided its funds were used according to SBA regulations.  This claim is deficient for three fundamental reasons: (1) The CARES Act does not create a private right of action; (2) Even if it did, Plaintiff's assertion that the CARES Act guarantees forgiveness of any approved PPP loan that is properly spent is incorrect as a matter of law; and (3) Plaintiff's PPP loan forgiveness application documentation, which is incorporated by reference into her Complaint and can be considered on a motion to dismiss, confirms that she is *not* entitled to forgiveness under the clear and unambiguous CARES Act and accompanying SBA regulations.  Plaintiff cannot

10

parlay her disappointment over the CARES Act-mandated limitations on loan forgiveness into common law claims against its PPP lender.  <u>Second</u>, all of Plaintiff's claims also fail for the additional reason that they are inadequately pled.  The Court should therefore dismiss Plaintiff's Complaint for failure to state a claim.

### A. Plaintiff's Fraud and Breach of Contract Claims Fail to State Cognizable Claims

#### i. The CARES Act Does Not Recognize a Private Right of Action

Plaintiff's fraud and breach of contract claims suffer from a fatal flaw.  These claims are at their core disguised claims to enforce a purported right under the CARES Act.  *See, e.g.*, Compl. at 17 ("Defendant [BofA] owes the Plaintiff $1 Million dollars [for] . . . the right she had to access federal funds from the CARES [A]ct.").  But the CARES Act does not recognize any private right of action.

"[P]rivate rights of action to enforce federal laws must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Courts deciding this issue uniformly hold that the CARES Act does not create a private right of action against PPP lenders.  *See, e.g.*, *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 751 (D. Md. 2020) (in a lawsuit against BofA as a PPP lender, finding nothing in the CARES Act that "evidences the requisite congressional intent to create a private right of action"); *Shehan v. U.S. Dep't of Just.*, No. 1:20-CV-00500, 2020 WL 7711635, at *11 (S.D. Ohio Dec. 29, 2020) (collecting cases).

Though Plaintiff may be disappointed with the CARES Act requirements that prevent BofA from forgiving Plaintiff's loan, she cannot generate common law fraud or breach of contract liability on the part of a PPP lender.  For this reason alone, the fraud and breach of contract claims should be dismissed.

11

### ii. The CARES Act and SBA Regulations Make Clear That PPP Loan Forgiveness Is Not Guaranteed and Any Funds That Do Not Qualify for Forgiveness Must Be Repaid

Even if the CARES Act recognized a private right of action, Plaintiff's fraud and breach of contract claims would still fail because, contrary to Plaintiff's assertions otherwise, the CARES Act does *not* guarantee the forgiveness of disbursed funds, even if the PPP recipient spent the funds in accordance with SBA guidance. Rather, the PPP forgiveness process requires that borrowers be eligible to receive the funds in the first place, based on clear requirements laid out in the CARES Act and SBA regulations. If a borrower is ineligible to receive already-disbursed PPP funds, those funds become ineligible for forgiveness and must be repaid back to the lender. There are no exceptions.

PPP borrowers are eligible for forgiveness of "up to the full principal amount" of their loan, subject to SBA rules. April 15, 2020 Interim Final Rule, 85 Fed. Reg. 20,811–12; 15 U.S.C. § 636m(f). Consistent with Plaintiff's certifications on its Promissory Note, Driver Decl. Exhibit 2, SBA regulations clearly and unequivocally required that *borrowers* (and not lenders) accurately determine whether they are eligible for a PPP loan. As the IFR observed:

> ***Can lenders rely on borrower documentation for loan forgiveness? Yes. The lender does not need to conduct any verification if the borrower submits documentation supporting its request for loan forgiveness and attests that it has accurately verified the payments for eligible costs***. The Administrator will hold harmless any lender that relies on such borrower documents and attestation from a borrower.

April 15, 2020 Interim Final Rule, 85 Fed. Reg. 20,811, 20,815 (emphasis added); June 1, 2020 Interim Final Rule, 85 Fed. Reg. 33,010, 33,013 ("Providing an accurate calculation of the loan forgiveness amount is the responsibility of the borrower, and the borrower attests to the accuracy of its reported information and calculations on the Loan Forgiveness Application."); February 5, 2021 Interim Final Rule, 86 Fed. Reg. 8,284, 8,285 (describing the PPP as a program "in which

12

loans and loan forgiveness are provided based on the borrower's certifications and documentation provided by the borrower"); *Savage*, No. 1:21-CV-0153-MSM-PAS, 2021 WL 3406387, at *1 ("Lenders would . . . rely on certifications of the borrower made on the PPP Application Form and be assured that the SBA would hold lenders harmless for any borrower error or misrepresentations." (quotation marks omitted)).

SBA regulations mandate that PPP loan forgiveness is contingent on the accuracy of the borrower's representations in its loan application regarding total payroll costs. Where a borrower was ineligible to receive disbursed PPP funds, those funds "will not be eligible for [PPP] loan forgiveness." June 1, 2020 Interim Final Rule, 85 Fed. Reg. 33,004, 33,005. The January 15, 2021 SBA Lender Procedural Notice, Control No. 5000-20078[12], elaborates:

> ***A borrower may not receive loan forgiveness for any amount that exceeds the correct maximum loan amount permitted by statute for that borrower. This is true whether the excess loan amount was caused by borrower error or lender error***. . . . If the lender or SBA, as applicable, determines a borrower was ineligible for any portion of its loan amount, forgiveness will be denied for the ineligible portion and the borrower must begin making payments on the remaining loan amount. Any unforgiven loan amounts remain obligations of the borrower, even if the borrower was ineligible to receive some or all of the loan.

*Id.* at 2–3 (emphasis added). There is no exception to this rule for borrowers that nevertheless use excess disbursed amounts for the benefit of their business or employees. June 26, 2020 Interim Final Rule, 85 Fed. Reg. 38,304, 38,306.

### iii. Plaintiff's PPP Loan Forgiveness Application Confirms That Plaintiff Was Not Entitled to a PPP Loan

The CARES Act and SBA regulations do not guarantee forgiveness of PPP loans and, as discussed more fully above, the documentation Plaintiff submitted with her PPP Loan Forgiveness

---

[12] *Available at* https://www.sba.gov/sites/default/files/2021-01/5000-20078-508.pdf.

Application confirmed that she was ineligible for PPP funding based on the relevant SBA regulations. *See supra* section II.B. As a result, Plaintiff must pay back the $18,625 balance of her PPP loan. *See* Driver Decl. Exhibit 2 at 1 ("If the SBA does not confirm forgiveness of the Loan, or only partly confirms forgiveness of the Loan, . . . Borrower will be obligated to repay to the Bank the total outstanding balance remaining due under the Loan, . . . and in such case, Bank will establish the terms for repayment of the Loan Balance."); January 15, 2021 SBA Lender Procedural Notice, Control No. 5000-20078 ("If the lender or SBA, as applicable, determines a borrower was ineligible for any portion of its loan amount, forgiveness will be denied for the ineligible portion and the borrower must begin making payments on the remaining loan amount."); June 1, 2020 Interim Final Rule, 85 Fed. Reg. 33,010, 33,012 ("Section 1106(b) of the CARES Act provides for forgiveness of a PPP loan only if the borrower is an 'eligible recipient.'"); 15 U.S.C. § 636(a)(36)(A)(iv) ("the term 'eligible recipient' means an individual or entity that is eligible to receive a covered loan"). The PPP does not permit (nor would it make sense for a program with limited resources to permit) applicants that received excess PPP funds to avoid repayment of such funds for any reason.

Plaintiff's core theory underpinning her Complaint is that she is entitled to full PPP forgiveness. Because this has no basis under the CARES Act or its implementing regulations, Plaintiff's fraud and breach of contract claims should be dismissed.

### B. All of Plaintiff's Claims Are Inadequately Pled

All of Plaintiffs' claims fail for an additional, equally fundamental reason: Plaintiff fails to adequately plead facts supporting her claims. They should, therefore, be dismissed.

#### i. Plaintiff Fails to State a Claim for Fraud

Plaintiff's fraud claim fails to state a claim on which relief can be granted with the specificity required under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Plaintiff fails to

14

identify *any* fraudulent statement Defendants allegedly made, let alone the who, what, where, and when regarding any such misrepresentation.

To state a claim for fraud, a plaintiff must allege that: (1) the defendant misrepresented a material fact to the plaintiff, knowing it to be false; (2) the defendant did so with fraudulent intent that the plaintiff act on it; and (3) the plaintiff, without knowledge of its falsity, detrimentally relied on the misrepresentation. *Alexander v. Fujitsu Bus. Commc'n Sys., Inc.*, 818 F. Supp. 462, 467 (D.N.H. 1993); *see also Obi v. Exeter Health Res., Inc.*, 2018 WL 5557062, at *4 (D.N.H. Oct. 2, 2018), *report and recommendation adopted,* 2018 WL 5456503 (D.N.H. Oct. 27, 2018) (dismissing fraud claim in *pro se* complaint). "[A] complaint's general averment of the defendant's 'knowledge' of material falsity" is inadequate unless the complaint "*also* sets forth specific facts that make it reasonable to believe that [the] defendant knew that a statement was materially false or misleading." *North American Catholic Educational Programming Foundation, Inc.*, 567 F.3d at 13 (citing *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992)). Moreover, Rule 9(b) of the Federal Rules of Civil Procedure provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In other words, Plaintiff must "specify the who, what, where, and when of the allegedly false or fraudulent representations." *Moore*, 848 F. Supp. 2d at 130. To survive a motion to dismiss, "the plaintiff must specify the *essential elements* of the fraud, and *specifically allege* the facts of the defendant's fraudulent actions." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 46–47 (1987).

Plaintiff's Complaint comes nowhere close to satisfying these pleading requirements, as it is devoid of *any* of the factual allegations necessary to make out a claim for fraud. Plaintiff fails to specify the who, what, where, and when details of the alleged fraud, which appears to be based on Plaintiff's generalized assertions that (1) Defendants are "canceling [PPP] loans" during the

15

PPP loan forgiveness process, Compl. at 2; (2) Defendants are reducing the amount eligible for forgiveness, *id.* at 7; and (3) Defendants are changing the terms of the PPP loan "once the borrower has received the funds," *id.* at 9.

These conclusory assertions fail to plead fraud with the requisite level of specificity. Although Plaintiff generally alleges that Defendants are engaged in a "nationwide scam," *id.* at 12, she fails to identify what the fraud is. *See, e.g.*, *Moore*, 848 F. Supp. 2d at 130. And although Plaintiff uses the word "fraud" several times, she fails to point to a single allegedly fraudulent representation made by either Defendant to Plaintiff—not one. Federal Rule of Civil Procedure 9(b) requires more than generalized and conclusory references to fraud, which is all that Plaintiff's Complaint contains. Furthermore, even if Plaintiff had alleged specific facts, she fails to explain how Defendants' policy to forgive only those PPP loans eligible for forgiveness under the relevant CARES Act and SBA regulations could possibly constitute fraud. And, as detailed above, *supra* section IV.A, Defendants' actions with respect to Plaintiff's forgiveness application are inarguably in line with the law. Because Plaintiff fails to plead even the basic contours of a fraud claim, the claim should be dismissed.

### ii. Plaintiff Fails to State a Claim for Breach of Contract

In her breach of contract claim, Plaintiff contends that Defendants breached the parties' contract by refusing to forgive Plaintiff's $18,625 PPP loan. Compl. at 10. But nowhere in her Complaint does Plaintiff specify any contractual provision Defendants allegedly breached. As such, Plaintiff's claim fails as a matter of law.

In order to state a breach of contract claim under New Hampshire law, a plaintiff must allege sufficient facts to show (1) that a valid, binding contract existed between the parties, and (2) that the defendant breached the terms of the contract. *Wilcox Indus. Corp. v. Hansen,* 870 F. Supp. 2d. 296, 311 (D.N.H. 2012); *Lassonde v. Stanton*, 956 A.2d 332, 338 (N.H. 2008) (holding "[a]

16

breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract."). Numerous cases in the First Circuit require that a successful breach of contract claim reference a specific provision allegedly breached in a valid contract. *See, e.g.*, *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (regarding Massachusetts law, holding that "Plaintiffs also must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep."); *Burt v. Bd. of Trustees of Univ. of Rhode Island*, 523 F. Supp. 3d 214, 220 (D.R.I. 2021) (regarding Rhode Island law); *cf. Wilcox Indus. Corp.*, 870 F. Supp. 2d at 311 (finding that plaintiff plausibly alleged a breach of a specific provision of a valid contract).

Here, Plaintiff does not specify what agreement was allegedly breached, let alone the specific provision of the agreement. Plaintiff's silence on this issue is fatal to her breach of contract claim, and it should therefore be dismissed on this ground.

Nor could Plaintiff allege any such breach. Plaintiff claims that if "a bank gives out the 'wrong change' to a customer, that loss is on the bank." Compl. at 10. But this analogy has it backwards. As discussed above, the CARES Act, SBA regulations, and Plaintiff's own representations all confirm that it was expressly Plaintiff's (and *not* Defendants') duty to verify Plaintiff's supporting documentation. *See* April 15, 2020 Interim Final Rule, 85 Fed. Reg. 20,811, 20,815 ("Can lenders rely on borrower documentation for loan forgiveness? Yes. ***The lender does not need to conduct any verification if the borrower submits documentation supporting its request for loan forgiveness and attests that it has accurately verified the payments for eligible costs***." (emphasis added)); *see also* Driver Decl. Exhibit 1 (containing Plaintiff's certification that the "Applicant is eligible to receive a loan under the rules in effect at the time this application is

17

submitted that have been issued by the [SBA] implementing the [PPP]"); Driver Decl. Exhibit 2 (containing Plaintiff's agreement that "[i]f the SBA does not confirm forgiveness of the Loan, or only partly confirms forgiveness of the Loan, . . . Borrower will be obligated to repay to the Bank the total outstanding balance remaining due under the Loan").

For these reasons, the Court should dismiss Plaintiff's breach of contract claim.

### iii. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress

"In order to make out a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant 'by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another.'" *Tessier v. Rockefeller*, 162 N.H. 324 (2011) (quoting *Morancy v. Morancy*, 134 N.H. 493, 496 (1991)). "In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." *Mikell v. Sch. Admin. Unit No. 33*, 158 N.H. 723, 729 (2009) (quotation marks omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.; see also Godfrey v. Perkin-Elmer Corp.*, 794 F. Supp. 1179, 1189 (D.N.H. 1992). "The standard for making a claim of intentional infliction of emotional distress is very high." *Moss v. Camp Pemigewassett, Inc.*, 312 F.3d 503, 511 (1st Cir. 2002); *see also Beaudette v. Bank of Am., Inc.*, No. 11-CV-569-JD, 2012 WL 139223, at *2 (D.N.H. Jan. 18, 2012) (dismissing *pro se* complaint because "courts have not found that banks' activities in obtaining mortgages that result in foreclosure meet the high standard require to state a claim for intentional infliction of emotional distress").

Plaintiff's allegations fall far short of meeting this high standard. In support of this claim, Plaintiff alleges in generalized terms that: (1) that she suffered "vicious personal slander, defamation, and [the false] reporting" of an unidentified crime, Compl. at 8; (2) that BofA mailed a letter regarding PPP loan forgiveness to customers, including Plaintiff, in an attempt to "scare" them, *id.* at 12; (3) that Scholz has "assaulted the character, standing and integrity of the Plaintiff's entire life's work," *id.* at 15; and (4) that Defendants engaged in "harassment, discrimination, [and] verbal abuse," against Plaintiff, *id.* at 17.

These allegations are utterly baseless. But even accepting them as true for purposes of a motion to dismiss, Plaintiff's generalized allegations lack any of the requisite detail necessary to satisfy the high bar of asserting a claim for intentional infliction of emotional distress. Apart from general assertions of wrongdoing, Plaintiff fails to explain what Defendants *did* that caused Plaintiff emotional distress. She does not explain (1) what Defendants did to defame or slander her, (2) what she is referring to with respect to the false reporting of a crime, or (3) what Scholz did to assault her character and integrity. Indeed, Plaintiff fails to plead that she even suffered any emotional distress aside from referencing the phrase "Infliction of Emotional Distress during a Crisis" one time. Compl. at 2. A list of conclusory accusations, without any factual assertions constituting the elements of an intentional infliction of emotional distress claim, is not enough to meet the "very high" standard required here. *Moss*, 312 F.3d at 511; *Ruivo*, No. 11-CV-466-PB, 2012 WL 5845452, at *2 (plaintiff "must state a plausible, not a merely conceivable, case for relief" (quotation marks omitted)).

The few specifics Plaintiff *does* include only serve to undermine, rather than support, her claim. For instance, Plaintiff quotes from email communications she allegedly received from Defendants, *see id.* at 5, 10, 11, but the emails are basic explanations of the PPP process and

19

contain nothing that could even arguably be construed as "atrocious[] and utterly intolerable in a civilized community," *see Mikell*, 158 N.H. at 729.  Further, Plaintiff references a PPP loan forgiveness letter sent to customers to "scare" them.  Compl. at 12.  A copy of this form letter makes clear that no such scare tactics were used.  Driver Decl. Exhibit 7.

For these reasons, the Court should dismiss Plaintiff's intentional infliction of emotional distress claim.

## V.        CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

Respectfully submitted,

BANK OF AMERICA, N.A. and MEGAN SCHOLZ

By their attorneys,

PRIMMER PIPER EGGLESTON & CRAMER PC

Dated:  November 9, 2021     By:    */s/ Thomas J. Pappas*
Thomas J. Pappas, Esq., N.H. Bar No. 4111
P.O. Box 3600
Manchester, NH 03105-3600
(603) 626-3300
tpappas@primmer.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BANK OF AMERICA, N.A. AND MEGAN SCHOLZ'S MOTION TO DISMISS has this day been forwarded via the Court's Electronic Case Filing System to:

Natasha Athens
Natasha4NHGov@protonmail.com

Dated: November 9, 2021        By:   */s/ Thomas J. Pappas*
Thomas J. Pappas, Esq., (N.H. Bar No. 4111)